IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:22-cr-00007-RMR

UNITED STATES OF AMERICA,

    Plaintiff,

v.

THOMAS MAURICE GRANT,

    Defendant.

## MR. GRANT'S MOTION TO SUPPRESS EVIDENCE AND REQUEST FOR HEARING

Mr. Grant, through undersigned counsel, moves this Court to issue an order suppressing all evidence obtained in violation of his Fourth Amendment rights. On July 28, 2021, Lakewood Police unlawfully seized Mr. Grant. Following the unlawful seizure, Lakewood Police Agent Anderson discovered a firearm and narcotics. For the reasons stated below, Mr. Grant respectfully requests a hearing and moves for the suppression of the illegally obtained evidence.

The Fourth Amendment protects citizens from "unreasonable searches and seizures" by government officials. U.S. Const. amend. IV. A person is seized when, considering all the surrounding circumstances, the police conduct "would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *United States v. King,* 990 F.2d 1552, 1556 (10th Cir. 1993) (quoting *Florida v. Bostick*,

1

501 U.S. 429 (1991)). An investigative stop is a seizure for Fourth Amendment purposes. *United States v. De La Cruz,* 703 F.3d 1193, 1196 (10th Cir. 2013). A seizure is reasonable if it is justified by a reasonable, articulable suspicion that the person detained has committed or is about to commit a crime. *Id.* (citing *Florida v. Royer*, 460 U.S. 491, 498 (1983)); *see also Terry v. Ohio*, 392 U.S. 1, 30 (1968) ("reasonable suspicion. . . that criminal activity may be afoot.")).

The reasonableness inquiry is two-fold. First, the officer's action must be "justified at its inception." *King*, 990 F.2d at 1157 (quoting *Terry,* 392 U.S. at 20)). Second, is whether the officer's action is "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* Because an investigative stop is constitutionally justified on less than probable cause, "an investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. . . the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion. . .." *Royer*, 460 U.S. at 1325. The government bears the burden of proving reasonable suspicion. *United States v. Lopez*, 849 F.3d 921, 925 (10th Cir. 2017).

Nonetheless, "police officers should not be required to take unnecessary risks in performing their duties, they are 'authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of [a *Terry*] stop.'" *United States v. Melendez-Garcia*, 28 F.3d 1046, 1051 (10th Cir. 2013) (quoting *United States v. Hensley*, 469 U.S.

221, 235 (1985)). "However, the use of force such as handcuffs and firearms is a far greater level of intrusion, and requires the government to demonstrate that 'the facts available to the officer would warrant a man of reasonable caution in the belief that the action taken was appropriate.'" *Id.* at 1052 (citing *King*, 990 F.2d at 1562)).

On July 28, 2021, Mr. Grant was sitting in the driver's seat of a white Ford Fusion, Colorado license plate LQE-319. He was parked in a designated parking space at the Mesa Motor Inn, located at 5600 W. Colfax Ave. Christopher Vazquez Euresti, was sitting in the front passenger seat. On July 28, there had been no calls reporting suspicious or unlawful activity with respect to Mr. Grant or the vehicle. Likewise, officers did not observe anything suspicious or unlawful relating to Mr. Grant or Mr. Vazquez Euresti.

Lakewood police Agent Anderson happened to be on patrol in the area and ran the license plate of the Ford Fusion. The Ford Fusion license plate was connected to an Attempt to Locate (ATL) from Thornton Police Department, referencing a domestic violence/menacing suspect, Christopher Vazquez Euresti. The domestic violence incident referenced in the ATL was from three days prior on July 25, 2021. The ATL included Mr. Vazquez Euresti's name and the associated CCIC report contained his biographical information including that he was a male, Hispanic, 5'9" and 200 pounds. Mr. Grant is Black and weighs significantly less than 200 pounds. Mr. Grant had no involvement whatsoever in the menacing incident and was not associated with the information in the ATL.

Based on this information, Agent Anderson drew his firearm[1] and ordered Mr. Grant and Mr. Vazquez Euresti out of the car. Both men complied. Agent Anderson ordered both men to get on the ground. Both men complied. Agent Anderson confirmed on his radio that Christopher Vazquez Euresti was the individual Thornton police were searching for. Agent Anderson asked if either of the men was Christopher and Mr. Vazquez Euresti candidly responded, he was.

Agents Anderson and Alberts, who arrived shortly thereafter, detained Mr. Vazquez Euresti in handcuffs. Then Agent Anderson walked over to where Mr. Grant laid on the pavement and placed him in handcuffs as well. Agent Anderson conducted a pat-down search of Mr. Grant during which Mr. Grant directed Agent Anderson to a firearm near his right leg. During the remainder of the pat-down, Agent Anderson located a "bulge" in Mr. Grant's left sock, which was later determined to contain narcotics.

Mr. Grant concedes there was reasonable suspicion for law enforcement to conduct the initial investigatory detention because of the attempt to locate (ATL) and Mr. Vazquez Euresti's association with the Ford Fusion. Likewise, Mr. Grant does not challenge Agent Anderson's order for him to get out of the car. *See Brendlin v. California*, 551 U.S. 249, 255 (2007) (all occupants of car are seized during traffic stop); *Pennsylvania v. Mimms*, 434 U.S. 106 (1997) (driver

---

[1] Based on information produced in discovery, officers state that since the ATL involved menacing, it was a 'high risk' situation. Ultimately, a small pocket knife was found in the car. It is unclear whether that pocket knife was the alleged weapon in the domestic violence incident that occurred three days prior.

4

may be lawfully ordered out of vehicle without violating Fourth Amendment); *Maryland v. Wilson*, 519 U.S. 408, (1997) (same for passengers).[2]

Mr. Grant does, however, assert that his Fourth Amendment rights were violated when Agent Anderson, after identifying Mr. Vazquez Euresti as the suspect justifying the initial detention and without any reasonable, articulable suspicion Mr. Grant had committed any crime or was presently armed and dangerous, imposed an even greater level of intrusion on Mr. Grant by placing him in handcuffs. Agent Anderson's actions were not reasonably related in scope to the circumstances that justified the intrusion in the first place. Moreover, there were not facts available to Agent Anderson that would warrant a man of reasonable caution in the belief that handcuffing Mr. Grant was appropriate or necessary for officer safety.

It is a fundamental tenant of the Fourth Amendment in the context of investigative detentions that once reasonable suspicion has been dispelled "even a very brief extension of the detention without consent or reasonable suspicion violates the Fourth Amendment." *De La Cruz*, 703 F.3d at 1198 (quoting *Burleson*, 657 F.3d at 1045). After the initial suspicion has dissipated an investigative detention can continue only if it is supported by new reasonable

---

[2] In a routine traffic stop, the driver is usually the individual generating cause for the traffic stop. In this instance, however, the passenger, Mr. Vazquez Euresti and his association to the vehicle, created the initial and only cause for the stop.

suspicion of criminal activity. *Id.* (citing *United States v. Soto-Cervantes*, 138 F.3d 1319, 1322 (10th Cir. 1998)).

In this case, Agent Anderson's suspicion arose solely from the attempt to locate report (ATL) associated with the car's license plate. The attempt to locate identified Mr. Vazquez Euresti as a suspect in a domestic violence incident that occurred 3 days prior. The initial seizure was based on Agent Anderson's belief that an occupant in the car might be Mr. Vazquez Euresti. There was no suspicion of other criminal activity at the stop's inception.

The attempt to locate did not identify Mr. Grant as a suspect or person of interest in Mr. Vazquez Euresti's domestic violence incident, nor did Agent Anderson independently observe any behavior, contraband, or infractions that would cause him to reasonably suspect Mr. Grant of any other criminal activity. The ATL report came from the Colorado Crime Information Center ("CCIC"). The CCIC report contained some descriptors of Mr. Vazquez Euresti, describing him as Hispanic and around 200 pounds, Mr. Grant a 160-pound Black male did not match that description. Once out of the car, Agent Anderson had both men in view and could readily determine that Mr. Grant was not the subject of the ATL. Agent Anderson confirmed that was the case when Mr. Vazquez Euresti identified himself as Christopher Vazquez Euresti. At this point, any suspicion that Mr. Grant was the target of the ATL dissipated. Without any additional suspicion that Mr. Grant was involved in criminal activity his continued detention was unreasonable.

The circumstances of Mr. Grant's continued detention are similar to those in *De La Cruz*. In *De La Cruz*, Immigration and Custom Enforcement agents were searching for a male by the name of Juan Guel Rivera. 703 F.3d at 1194–95. Agents had a picture of Guel Rivera and stopped a truck on the belief that the driver looked like him. *Id.* The truck's driver was in fact De La Cruz, who was dropping his brother off for work. *Id.* Upon contact, the brother, who was in the passenger seat, fled on foot. Agents gave chase. *Id.* While the chase was underway, another agent handcuffed De La Cruz for safety reasons. *Id.* Shortly thereafter, Agents confirmed that De La Cruz was not the wanted suspect because he did not match the picture they had. *Id.* Nonetheless, Agents continued to detain De La Cruz and verify his identity. *Id.* At that point, it was determined De La Cruz was unlawfully in the United States and he was arrested. *Id.*

The Court held that the continued detention of De La Cruz after determining he was not the wanted suspect violated his Fourth Amendment rights. *Id.* at 1197. At that time any suspicion related to De La Cruz vanished. *Id.* Moreover, the Court held that the presence and flight of his brother could not justify De La Cruz's continued detention. *Id.* at 1198. Although the brother was discovered to be unlawfully in the United States, that crime would not necessarily suggest that the driver, De La Cruz, was also involved in criminal activity. *Id.*

Like in De La Cruz, a reasonable officer in this case would have determined that Mr. Grant was not the wanted suspect. This was readily

7

apparent from the descriptors provided in the ATL but also confirmed by Mr. Vazquez Euresti's voluntary identification. Thus, any suspicion that Mr. Grant was involved in the criminal activity vanished. Agent Anderson did not discover any additional suspicion that Mr. Grant was involved in other criminal activity after identifying Mr. Vazquez Euresti. Nonetheless, Agent Anderson continued to detain Mr. Grant and in fact imposed a greater intrusion upon him by restraining him in handcuffs.

Similarly, Mr. Vazquez Euresti's presence cannot constitutionally justify Mr. Grant's continued detention. Like the passenger's offense in De La Cruz, Mr. Vazquez Euresti's alleged domestic violence offense in no way suggests Mr. Grant was part of that alleged crime.  By its nature, Mr. Vazquez Euresti would have been the sole perpetrator in the domestic violence crime from three days ago.  Unlike a drug offense or robbery offense, a domestic violence menacing offense is not commonly a jointly undertaken activity in which occupants of a car may all be aware. *Compare with Maryland v. Pringle*, 540 U.S. 336, 373 (2003) (noting that drug dealing is often a common enterprise). Furthermore, the offense for which Mr. Vazquez Euresti was wanted occurred three days before the stop in question which is further removes Mr. Grant from any related suspicion.

Thus, the continued detention of Mr. Grant and his restraint in handcuffs was not reasonably related in scope to the circumstances which justified the interference in the first place.

When an officer's actions exceed what is reasonably necessary under the totality of the circumstances, the stop may only be justified by probable cause or consent. *Melendez-Garcia*, 28 F.3d at 1051. While there are situations when the use of firearms and handcuffs do not automatically transform a *Terry* detention into a full custodial arrest, the circumstances must reasonably warrant such measures. *Id.* at 1052. The use of handcuffs is greater than a de minimus intrusion and requires the government to demonstrate that the facts available to the officer would warrant a man of reasonable caution in the belief the action taken was appropriate. *Id.* In this case, the added measure of placing Mr. Grant in handcuffs after identifying the wanted suspect was not reasonably necessary for officer safety or otherwise.

While "the Fourth Amendment does not require that officers unnecessarily risk their lives when encountering a suspect whom they reasonably believe to be armed and dangerous," *United States v. Mosely*, 743 F.3d 1317, 1330 (10th Cir. 2014), there were not facts known to Agent Anderson at the time Mr. Grant was placed in handcuffs that suggest Mr. Grant was armed or dangerous or otherwise posed a safety threat.

The circumstances surrounding Mr. Grant's detention are distinguishable from many of the circumstances in which the Court has found greater intrusion, by way of handcuffs or the use of firearms, warranted during an investigative detention. For instance, Mr. Grant had not been observed by law enforcement or any civilian witness with any sort of weapon on or around July 28, 2021.

9

*Compare with Mosley*, 743 F.3d at 1330 (holding use of firearms warranted when tipster reported car occupant had gun on lap in high crime area at 3:00 a.m.); *see also United States v. Perdue,* 8 F.3d 1455, 1463 (10th Cir. 1993) (finding officers justified in displaying force after discovering guns and marijuana in remote structure that defendant was headed toward); *see also United States v. Merritt*, 695 F.2d 1263, 1273 (finding that use of firearms was justified in detention of wanted murder suspect who was staying in home where numerous guns were observed by law enforcement).

Mr. Grant did not display any violent, aggressive, or nervous behavior that might cause a reasonable officer to question his or her safety. *Compare with United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir. 1993) (finding that firearms and handcuffs justified in detention of man who had just threatened to kill someone and was behaving aggressively in his vehicle). To the contrary, Mr. Grant complied with all directions and laid prone on the pavement at the Agent's direction.

Mr. Grant's criminal history was not known to Agent Anderson at the inception of the detention, nor did Agent Anderson observe any unusual bulges or signs of concealed weapons on Mr. Grant's person. *See e.g., United States v. Hammond*, 890 F.3d 901, 906–07 (10th Cir. 2018) (stating that criminal history, known gang affiliation, and gang clothing may be relevant to determination that one is armed and dangerous).

Thus, Agent Anderson had no individualized suspicion that Mr. Grant was armed and dangerous or otherwise presented a risk to officer safety warranting the increased intrusion of placing Mr. Grant in handcuffs during an investigatory detention—particularly after the suspect justifying the initial stop had been identified and detained.

Agent Anderson's use of increased force during this investigatory detention was premised on an "office safety" note in the attempt to locate for Mr. Vazquez Euresti. It is a hallmark of reasonable suspicion that the suspicion be individualized to the person detained or searched. *See City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000). In the context of a *Terry* frisk, a cursory search for purposes of officer safety, there must be reasonable suspicion *directed at the person to be frisked*. *Ybarra v. Illinois,* 444 U.S. 85, 94 (1979). The Supreme Court has stated that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Id.* at 91 (quoting *Sibron v. New York,* 392 U.S. 40, 62–63 (1968)). Why then would a person's mere propinquity to others independently deemed to present a risk to officer safety give rise to a belief that they too presented the same risk? *Ybarra* tells us that one does not become a crime suspect merely because of their proximity to other suspects. Likewise, Mr. Grant does not present an officer safety threat just because of his proximity to Mr. Vazquez Euresti.

The circumstances of the investigatory stop in this case did not warrant the increased intrusion and handcuffing of Mr. Grant. Mr. Grant did not present a threat to officer safety that might, in certain other circumstances, justify the use of force in effecting an investigatory stop. Mr. Grant individually presented no risk to officer safety during the stop. His proximity to Mr. Vazquez Euresti cannot constitutionally justify the greater intrusion of handcuffing him. Finally, any risk to officer safety was minimized after Mr. Vazquez Euresti was detained on the pavement and put in handcuffs, which occurred before Mr. Grant was placed in handcuffs.

In conclusion, Agent Anderson exceeded the scope of the initial detention when he placed Mr. Grant in handcuffs after identifying and detaining the suspect who justified the detention at the outset. Additionally, Agent Anderson's actions in placing Mr. Grant into handcuffs exceeded what was reasonably necessary under the circumstances. As such, Agent Anderson violated Mr. Grant's Fourth Amendment right to be free from unreasonable seizures. As a result of the constitutional violation, Agent Anderson obtained evidence that the Government seeks to admit against Mr. Grant at his trial. All evidence obtained as a result of the constitutional violation should be suppressed.

Mr. Grant requests a hearing on this issue.

WHEREFORE, Mr. Grant moves to suppress evidence that was illegally obtained in violation of his constitutional rights and requests a hearing on these issues.

Dated: October 3, 2022.

Respectfully submitted,

*s/ Kathryn Stimson*
Kathryn Stimson
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone:  720.689.8909
Email:   stimson@slhlegal.com

*Attorney for Thomas Maurice Grant*

## Certificate of Service

I certify that on October 3, 2022, I electronically filed the foregoing *Mr. Grant's Motion to Suppress Evidence and Request for Hearing* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address:

Thomas Minser
Albert Buchman
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Ste. 1600
Denver, CO 80202
thomas.minser@usdoj.gov
al.buchman@usdoj.gov

*s/ Brenda Rodriguez*
Brenda Rodriguez