IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 1:22-cr-00007-RMR

UNITED STATES OF AMERICA,

        Plaintiff,

v.

1. THOMAS MAURICE GRANT,

        Defendant.

---

**GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION TO SUPPRESS [ECF 36]**

---

The United States of America (Government) by United States Attorney Cole Finegan, and the undersigned Assistant United States Attorney, respectfully submits the following response to the defendant's Motion to Suppress [ECF 36].

The defendant was indicted with one count of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). ECF 1. He now seeks to suppress the firearm seized from him on July 28, 2021, by arguing that law enforcement did not have reasonable suspicion to place him into handcuffs. ECF 36.

However, his argument misstates the facts. Based upon the totality of the circumstances, law enforcement had reasonable suspicion the defendant was an individual wanted for felony menacing and domestic violence charges at the time he was handcuffed. Accordingly, there was no Fourth Amendment violation and his motion fails.

### I. Background

On July 28, 2021, at approximately 11:51 p.m., Lakewood Police Agent Taber

Anderson was on patrol in the area of 5600 West Colfax Avenue in Lakewood, Colorado. At that time, he observed a white Ford Fusion parked at the Mesa Motor Inn with a person in the driver's seat who was then joined in the vehicle by another individual entering the front passenger seat. When Agent Anderson ran the license plate, he was notified of an outstanding "attempt to locate" (ATL) that Thornton Police Department had placed on the vehicle. The ATL included an officer safety warning pertaining to the registered owner of the vehicle, Christopher Vazquez-Euresti, and indicated there were felony menacing and domestic violence charges pending against him.

Agent Anderson initiated a stop of the vehicle, and since additional law enforcement officers had not arrived on scene yet, he drew his gun and ordered the occupants to exit and lay down on the ground for officer safety. The two men inside the car were cooperative and complied with the request. As the men were on the ground, dispatch indicated the suspect's date of birth, and in response to an inquiry from Agent Anderson, the man from the passenger seat of the car identified himself as Christopher Vazquez-Euresti.

After Lakewood Police Agent Robert Albrets joined Agent Anderson on scene, Agent Anderson approached the male from the driver's seat of the vehicle, while Agent Albrets approached the passenger. Agent Anderson handcuffed the driver for officer safety, and asked him if he was in possession of any weapons. The man indicated he was, and Agent Anderson frisked him, locating a loaded Glock 19 in his pants near his right knee, an ETS brand Glock 9mm high capacity magazine loaded with 31 rounds, $482 in cash, and a scale with white residue in the man's front left pocket, and a loaded 15 round magazine in the man's front right pocket. The recovery of these items, which

established probable cause to arrest him,[1] were discovered less than three minutes after Agent Anderson initiated the stop, and seconds after the driver was handcuffed.

During the frisk, Agent Anderson also noticed a bulge in the man's left sock. Agent Anderson removed the bulge from the man's sock, only to discover it was another rolled up sock, which he left on the ground while taking the still unknown male to his police vehicle. Later, Agent Albrets would identify him as Thomas Maurice Grant, the defendant, and learn that he was a multi-time convicted felon.

Around the time the defendant's identity and felony conviction status were discovered, Agent Anderson searched the rolled-up sock and found a plastic bag containing 3.38 grams of a substance that a field tested indicated was cocaine. In addition, a receipt from the Gun Room was in Grant's wallet relating to a purchase of Glock 19 parts.

Agent Anderson then received confirmation that there was an active arrest warrant for Vazquez-Euresti for charges including felony menacing and domestic violence, and learned the case involved a five to six inch knife. A knife consistent with that description was observed in plain view by another Lakewood Police Agent before Vazquez-Euresti gave verbal consent to search the Ford. Thereafter, law enforcement discovered a backpack containing Grant's mail in the back seat, along with an additional scale, and four rounds of 9mm ammunition.

## II.   Legal Authority and Argument

In his motion, the defendant "concedes there was reasonable suspicion for law enforcement to conduct the initial investigative detention because the attempt to locate

---

[1] Possession of a high capacity magazine, a magazine designed to accept 15 rounds or more, is a class 2 misdemeanor. Colorado Revised Statutes Title 18. Criminal Code § 18-12-302.

(ATL) and Mr. Vazquez-Euresti's association with the Ford Fusion." ECF 36 at 4. He also "does not challenge Agent Anderson's order for him to get out of the car." *Id*. Thus, the only issue for the Court is the defendant's allegation that a Fourth Amendment violation occurred when police placed him into handcuffs, because police "could readily determine [he] was not the subject of the ATL." *Id*. at 5-6. The problem, however, is that the defendant's motion relies upon a misstatement of the facts. Specifically, Agent Anderson had reasonable suspicion the defendant was the armed and dangerous suspect when the defendant was placed into handcuffs, because the defendant was in the driver's seat of a vehicle registered to the armed and dangerous suspect, and Agent Anderson had no other information to sufficiently identify the occupants of the vehicle.

> **A. Law enforcement had reasonable suspicion the defendant was armed and dangerous at the time he was placed into handcuffs**

The defendant's concession that his detention was legal at its inception leaves only one issue to be decided - whether his detention was "reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Kinzalow*, 236 Fed. App'x 414, 418 (10th Cir. 2007). Law enforcement must be able to protect themselves and others from violence even where they may lack probable cause for an arrest. *United States v. Merritt*, 695 F.2d 1263, 1272 (10th Cir. 1982). The Supreme Court has established that it is permissible for a police officer to "search for weapons…where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Terry v. Ohio*, 392 U.S. 1, 27(1968). The inquiry as to the reasonableness of a search for weapons is "whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id*. This

Court must afford "due weight" to the "specific reasonable inferences which [an officer] is entitled to draw from the facts in light of his experience." *Id*. "The officer need not be absolutely certain that an individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* The evidence, here, establishes the defendant's detention was supported by such reasonable suspicion.

Agent Anderson was faced with the following scenario prior to handcuffing the defendant:

i. It was late at night.

ii. There were only two officers on scene.

iii. He observed the defendant as the initial sole occupant of the vehicle, sitting in the driver's seat of the vehicle registered to Vazquez-Euresti, before another individual later sat in the front passenger seat of the car.

iv. He knew there were outstanding charges against Vazquez-Euresti for felony menacing and domestic violence.

v. He had information that Vazquez-Euresti was potentially a danger to officers and could be armed, but did not know with what type of weapon.

vi. The passenger claimed he was Vazquez-Euresti, but he did not have any physical description or other reliable information to confirm it.

Although Agent Anderson later confirmed the passenger was Vazquez-Euresti, at the time the defendant was placed into handcuffs, it was reasonable for police to believe the potentially armed suspect was the party located in the driver's seat of the vehicle based on these circumstances. *See United States v. Jacquez*, 284 F. App'x 544 (10th Cir. 2008) (holding police had reasonable suspicion to stop a vehicle and detain the driver, where the registered owner had an outstanding arrest warrant, and law enforcement had no reason to believe that the person driving was anyone other than owner); *see also United*

*States v. Shareef*, 100 F.3d 1491, 1505 (10th Cir. 1996) (holding factual mistakes never invalidate an investigative detention, if the mistake is reasonable, and the police are unaware of it). Moreover, the time, location, and limited number of officers on scene, provided additional grounds for police to proceed with caution. *See United States v. Fager*, 811 F.3d 381, 389 (10th Cir. 2016) ("While an officer's concern that two or more individuals could launch a coordinated attack on him may not be reasonable in many other types of encounters between law enforcement personnel and civilians, it is entirely reasonable in the context of traffic stops because these encounters historically have proven to be especially dangerous to officers.").

The defendant's motion rests on the assumption that law enforcement handcuffed him despite knowing he was not the subject of the ATL. ECF 36 at 4-5. The argument, however, misstates the facts and also ignores the applicable law on the subject. With regard to the facts, Agent Anderson *had not* confirmed the passenger was Vazquez-Euresti at the time the defendant was handcuffed. The only information provided to Agent Anderson from dispatch at the time was the suspect's date of birth, which was not helpful in determining the identity of the occupants. And contrary to the defendant's suggestion, the fact the passenger identified himself as the suspect was not something law enforcement had to accept as the truth, and did not require them to stop the process of conducting a pat-down search for officer safety. *See United States v. Lang*, 81 F.3d 955, 967 (10th Cir.1996) (holding law enforcement is not required to stop a pat-down search of suspect they reasonably believe may be armed and dangerous simply based on the suspect's unconfirmed statement of his identity).

Even further, the Tenth Circuit has consistently allowed police officers who are

attempting to detain a dangerous suspect to draw their weapons, conduct pat-down searches of the suspect and his companions, and, when there is a vehicle stop, handcuff unidentified individuals travelling in the car with the suspect. *See Shareef*, 100 F.3d at 1502; *see also United States v. Lang*, 81 F.3d 955, 966 (10th Cir. 1996) (holding that it was reasonable for federal agents to pat down the defendant during an investigative detention because agents reasonably believed the person with he was traveling with was a suspect in two armed robberies); *United States v. Merritt*, 695 F.2d 1263 (10th Cir. 1982) (knowledge that arms were found at suspect's residence justified the officer's suspicion that the suspect and his unidentified companion may be armed and warranted police in searching the suspect and his companion during the stop); *United States v. Burciaga-Burciaga,* 147 F. App'x 725 (10th Cir. 2005) (finding that it was reasonable for the police to order an occupant of a vehicle out of the car at gun point and place handcuffs on him because the officers had identified the vehicle as being used in an illegal narcotics transaction and "the officers believed, although incorrectly, that the driver of the [vehicle] was possibly wanted in reference to a murder investigation.").

Finally, the case *United States v. De La Cruz*, 703 F.3d 1193 (10th Cir. 2013) is distinguishable. That case involved a challenge to the scope of an investigative detention <u>*after*</u> agents had dispelled their suspicion that the defendant was the suspect wanted for an immigration offense. *Id*. at 1196-98. In light of this, the government had the burden of proving that the continued detention of the defendant was warranted, and the court rejected the argument that the flight of a suspect engaged in a status crime was sufficient to suspect the defendant of wrongdoing, where there was no other indicia of criminal activity. *Id*. Such circumstances were not present here, where Agent Anderson <u>had not</u>

confirmed the passenger was Vazquez-Euresti, and the defendant was still suspected of being the dangerous and potentially armed suspect wanted for a violent felony.

Accordingly, law enforcement had reasonable suspicion the defendant was an armed and dangerous, and placing him into handcuffs was reasonable for officer safety. Therefore, this Court should deny his motion.

**B. Placing the defendant into handcuffs was part of a lawful protective detention**

Even assuming for the sake of argument police determined the defendant was not the subject of the ATL before handcuffing him (again, that did not occur), his motion still fails where he was in an immediately adjacent area during the arrest of Vazquez-Euresti. Officers are permitted to detain a person in the immediate area while effectuating a warrant for the duration of the arrest in a "protective detention." *Maryland v. Buie*, 494 U.S. 325, 333 (1990); *United States v. Maddox*, 388 F.3d 1356, 1362 (10th Cir.2004) (holding *Buie* applied to protective detention of individual in carport during execution of arrest warrant inside a home because officers "may take reasonable steps to ensure their safety after, and while making the arrest."). The protective detention of individuals immediately adjoining the place of arrest and at the arrest scene is reasonable for the safety of the officer, regardless of the officers' suspicion of danger. *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir.1995) (holding that placing a bystander in temporary protective detention without a suspicion of danger when this person in an immediately adjoining area to the arrestee was a reasonable protective detention).

In *United States v. Kinzalow*, 236 F. App'x 414, 416 (10th Cir. 2007), officers were executing an arrest warrant for a suspect in a drive–by shooting. Upon entering the residence, one officer arrested the suspect, and a second officer ordered Kinzalow and

two other individuals in an immediately adjoining area to get on the ground, and handcuffed them. *Id*. The officer then removed Kinzalow along with the two other individuals from the apartment. *Id*. The Tenth Circuit analyzed the encounter, including handcuffing and removing Kinzalow from the apartment, as a protective detention. The court determined that because of Kinzalow's proximity to the dangerous suspect being arrested, police were justified in handcuffing and then removing him from the area. *Id*. at 417–18.

As was the case in *Kinzalow*, the defendant was immediately adjacent to Vazquez-Euresti while police were effectuating his arrest. Vazquez-Euresti, like the suspect in *Kinzalow*, was also wanted for a violent crime involving a weapon, and law enforcement had information he could be armed and dangerous. Although the defendant was discovered sitting next to Vazquez-Euresti in the driver's seat of Vazquez-Euresti's car, as opposed to a residence, this distinction actually results in even greater suspicion than was present in *Kinzalow*, because it suggests a common purpose between the defendant and Vazquez-Euresti, and the reasonable inference the defendant knew of Vazquez-Euresti's arrest warrants and wanted to conceal evidence of any his crime. *See Wyoming v. Houghton*, 526 U.S. 295, 304-05 (1999) ("[A] car passenger – unlike the unwitting tavern patron in Ybarra – will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing."); *see also United States v. Dennison*, 410 F.3d 1203, 1213 (10th Cir. 2005) (reasonable for officers to "infer a common purpose or 'enterprise' between the two men" and believe that driver knew of passenger's arrest warrants and "would want to conceal evidence of any wrongdoing.").

Accordingly, it was reasonable for law enforcement to place the defendant into handcuffs as a protective detention while they arrested Vazquez-Euresti, and this Court should deny his motion.

### III.   Conclusion

At the time the defendant was handcuffed, he was suspected of being an armed and dangerous individual charged with a violent felony offense. Seconds later, a firearm and extended magazine were discovered possession. Based upon these circumstances, handcuffing the defendant was entirely reasonable for officer safety purposes, and his detention did not violate the Fourth Amendment. Therefore, the defendant's motion to suppress should be denied.

          COLE FINEGAN
          United States Attorney

By:   /s/ *Thomas Minser*
       THOMAS MINSER
       Assistant United States Attorneys
       1801 California St., Suite 1600
       Denver, Colorado 80202
       Phone:  (303) 454-0203
       Fax:  (303) 454-0405
       E-mail: Thomas.Minser@usdoj.gov
       Attorney for the United States

## **CERTIFICATE OF SERVICE**

  I hereby certify that on 17th day of October 2022, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO THE DEFENDANT'S MOTION TO SUPPRESS [ECF 36]** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

            *By: Deana Ambrosen*
            Legal Assistant
            United States Attorney's Office